UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LOIS J. BROWN and<br>CHARLES H. BROWN,<br><br>      Plaintiffs,<br><br>      v.<br><br>MICHAEL L. SPICHIGER,<br><br>      Defendant. | Civil Action No. 1:10-CV-158-JVB |

**OPINION & ORDER**

Plaintiffs now proceed on their Third Amended Complaint, against Michael Spichiger alone. They allege that in the course of selling them annuities and acting as their investment adviser, Defendant committed various frauds and breaches of fiduciary duty, including churning. The subject of this Order is Defendant's pending motion for partial summary judgment. In support of the motion, Defendant has shown that two class-action settlements approved by the United States District Court for the Central District of California release him from liability to Plaintiffs for any actions he took as an agent of Midland National Life Insurance Company ("Midland") or Old Mutual Financial Company ("Old Mutual"). Plaintiffs have raised no genuine issue of material fact in response, so Defendant is entitled to a partial summary judgment disposing of claims related to Midland and Old Mutual annuities.

**A. MATERIAL FACTS AND BACKGROUND**

The facts material to this Order, including all well-pled facts of the Third Amended Complaint, are uncontested or stipulated for the limited purposes of the motion at bar. (*See* Br.

Supp. Mot. Partial Summ. J., DE 122, at 3–6; Resp. to Mot. Partial Summ. J., DE 114; Stip., DE 122-1.) As Defendant explains, the Third Amended Complaint stems from Defendant's sale to Plaintiffs of twelve annuities issued by four insurance companies. (DE 122 at 1.) Midland issued seven of those twelve annuities; Old Mutual issued one. (*Id.* at 1.) Defendant told Plaintiffs they should buy the annuities to take advantage of a so-called "laddering system." (Third Am. Compl., DE 101, ¶ 23.) His sales pitch was to transfer funds from one annuity to the next to obtain bonuses on premium deposits that were available only during the first years of each annuity. (*Id.*) Midland's annuities provided the largest bonuses, so Plaintiffs contend the fact that Defendant encouraged them to buy other annuities discredits his explanation of the strategy. (*Id.* ¶¶ 23–27.) Instead, they say the circumstances "suggest[] that Spichiger's primary goal was to benefit from the numerous sales without regard to Plaintiffs' best financial interest." (*Id.* ¶ 27.) Defendant also recommended investments to Plaintiffs that were too risky for their investment objectives, and he dishonestly represented the investments to be riskless. (*Id.* ¶¶ 31–35.) "Plaintiffs incurred fees and/or surrender charges on the various actions which occurred under the advice and direction of Spichiger, and Spichiger earned substantial commissions and fees thereon, with his own self interest in earning increasingly greater commissions in his dealings with Plaintiffs being his apparent goal." (*Id.* ¶ 37.)

Midland's, Old Mutual's, and their agents' sales and servicing of annuities gave rise to two class actions in the United States District Court for the Central District of California: *In re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, MDL No. 07-1825 CAS (MANx) and *Vida F. Negrete v. Fidelity and Guaranty Life Insurance Company*, case no. 2:05-CV-6837 CAS. (DE 122 at 1; Mot. Partial Summ. J., DE 121, at 1.) Plaintiffs were members of both classes who did not opt out. Settlement agreements have been judicially

approved in both cases, (DE 122-1 at 2) and the parties treat them as substantially identical. (*See* DE 122 at 4 n.2; DE 114.) The Court will therefore follow suit. This Order treats the Old Mutual settlement as identical to the Midland one, except that it covers Old Mutual annuities rather than Midland annuities.

Defendant has affirmed under penalty of perjury, with no objection or dispute from Plaintiffs, that his actions "with respect to the sale of the annuity products to the Plaintiffs described in the Third Amended Complaint" were within "the ordinary course of [his] business and . . . the scope of [his] agency with" Midland and Old Mutual. (Spichiger Aff. ¶ 4, DE 122-2.)

By the settlement of the class actions, every class member "fully and finally release[d] Releasees from all Released Claims." (Doc. no. 399-1 in C.D. Cal. case no. 2:07-ML-01825-CAS-MAN, "Midland Class-Action Settlement," p. 49 of 150 (CM-ECF pagination).) "Releasees" included the issuers and their "past, present and future . . . agents (including, without limitation, those acting on behalf of [the issuers] and within the scope of their agency)." (*Id.* at 48.) "Released Claims" included:

> any and all past, present or future claims, complaints, causes of action, allegations of liability, damages, restitution, equitable, legal or other interest, or demands or rights, whether known or unknown, that concern, refer or relate to, or arise out of, in whole or in part any facts, events or transactions relating to the Annuities that have occurred or were in existence at any time prior to the entry of the Final Order and Judgment, including, without limitation:
>
> (a) the offering of advice in any manner related to the Annuities;
> (b) the design, marketing, solicitation, sale, appropriateness or administration of the Annuities;
> (c) any disclosures or advertising related to the Annuities, whether written or oral;
> (d) the computation and crediting of interest to policy accounts; or
> (e) the calculation and availability of any accumulation or surrender values, or annuity payments, or the exercise of any rights under the Annuities.

(*Id.* at 48–49.) Plaintiffs have not argued that their annuities are excluded from the releases' definition of "Annuities."

3

The class members—and hence, Plaintiffs—likewise waived Released Claims that were then unknown or unsuspected, thereby forfeiting rights under California Civil Code § 1542[1] "and all similar federal or state laws, rules or legal principles of any other jurisdiction." (Midland Class-Action Settlement at 50.)

As explained above, there is no need to discuss the settlement of the Old Mutual class action separately in great detail. (*See* DE 122 at 4 n.2; DE 114.) A few points, however, provide valuable context. First, the Court has already recognized that the *Negrete* settlement "explicitly releases Old Mutual and its agents from all past and present actions arising from the sale of their products and advice given by their agents." (Order of July 1, 2011; DE 79; at 2.) "Moreover," the United States District Court for "the Central District of California issued an order enjoining the Plaintiffs from bringing this suit against Old Mutual." (*Id.*) The Court has ruled that "Old Mutual's Settlement Agreement Bars Plaintiffs' Claims Against Old Mutual and Its Agents." (*Id.*)[2]

Both underlying class-action settlements, by their terms, "shall be governed by, and interpreted according to, the law of the State of California, excluding its conflict of laws provisions." (Midland Class-Action Settlement at 72 of 150 (CM-ECF pagination).)

In seeking partial summary judgment, Defendant argues Plaintiffs have released the claims they assert against him in relation to Midland and Old Mutual annuities. Plaintiffs respond with a formulation of five issues they contend preclude summary judgment, and what they present as two arguments in support. As stated by Plaintiffs, those issues are:

---

[1] "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Cal. Civ. Code § 1542.

[2] Plaintiffs point out in a "procedural note" (DE 114 at 1–2) that the Court also explained that under Minnesota's *res judicata* law, Allianz's favorable jury verdict in 2007 in the United States District Court for the District of Minnesota did not bar Plaintiffs' claims in this case against Defendant for sales of Allianz products.

> a. Whether the resolutions of the prior class action lawsuits against [Old Mutual] and Midland release Spichiger from all liability in the case at bar.
>
> b. Whether the claims at bar were litigated in the Class Actions.
>
> c. Whether the Browns had any intent to release claims not prosecuted in the Class Actions.
>
> d. Whether disparate bargaining power existed between the Browns and the Class Action Defendants in negotiating the terms of the Class Action settlement agreements.
>
> e. Whether preclusion of the claims at bar due to the Class Action settlements would be unconscionable and, therefore, unenforceable.

(DE 114 at 2.) Plaintiffs' first supporting argument is that the class-action settlements could not cover their claims against Defendant because those claims involve a fact-sensitive inquiry into Defendant's actions and mental state. In a related effort within the same section of their brief, Plaintiffs attempt to show that Defendant's interpretation of the releases leads to absurdity. (*Id.* at 3–6.) Next, Plaintiffs contend Defendant cannot enforce the releases because Plaintiffs had too little bargaining power in negotiating them. (*Id.* at 6–8.)

### B. LAW AND ANALYSIS

"The court shall grant summary judgment," or, in this case, partial summary judgment, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (entitled "Motion for Summary Judgment or Partial Summary Judgment"). A motion under Rule 56 of the Federal Rules of Civil Procedure is not an occasion for weighing evidence, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), though a factual question is "genuine" only if it could be reasonably resolved in favor of the non-moving party. *See, e.g.*, *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011). Substantive law determines whether a dispute is material. *Liberty Lobby*, 477 U.S. at 248.

5

In diversity cases such as this, federal courts apply their respective states' conflict-of-laws rules to find the applicable substantive law. *See Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Thus, this Court looks first to Indiana law, under which "[p]arties may generally choose the law that will govern their agreements." *Hoehn v. Hoehn*, 716 N.E.2d 479, 484 (Ind. Ct. App. 1999); *see also Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) ("Indiana choice of law doctrine favors contractual stipulations as to governing law." (citing *Hoehn*, 716 N.E.2d at 484)). Plaintiffs offer no reason why the underlying class-action settlements' selection of California law is invalid as a matter of Indiana law, so the Court will follow Indiana's general practice of honoring those clauses, which means interpreting the releases according to California law.[3]

California courts interpret a release as they interpret any other contract. *Hess v. Ford Motor Co.*, 41 P.3d 46, 51 (Cal. 2002) (citing Cal. Civ. Code § 1635 ("All contracts . . . are to be interpreted by the same rules, except as otherwise provided by this Code.")). By California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this Title." Cal. Civ. Code § 1639. "When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." Cal. Civ. Code § 1640.

---

[3] Yes, "before entangling itself in *messy* issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states," *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992) (emphasis added), but the choice of law in this case is simple.

Plaintiffs have not argued the contractual language in this case is ambiguous, and it isn't. The writing plainly releases Plaintiffs' claims against Old Mutual's and Midland's agents relating to those issuers' annuities that existed at the time. And Defendant is seeking summary judgment of only the claims relating to *those issuers'* annuities. So upon initial review, Defendant has the winning argument.

Plaintiffs counter by citing *Rowe v. Morgan Stanley Dean Witter*, 191 F.R.D. 398 (D.N.J. 1999), to show that claims like theirs were (and are) unsuitable to class adjudication. But whether churning, other breaches of fiduciary duty, or fraud were or could have been certified for class treatment is irrelevant, because the releases were not limited to class claims.

Next, Plaintiffs attempt to demonstrate that Defendant's interpretation leads to absurd results. This does matter. *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, *and does not involve an absurdity*." (Emphasis added.)). According to Plaintiffs, (1) "Defendant's position would preclude a claim in which a defendant used the subject annuities for money laundering," and (2) "Claims of criminal theft and conversion would be precluded so long as the converted funds were used to purchase annuities." (DE 114 at 6.) The releases plainly do not purport to forestall any criminal prosecution, however. And insofar as Plaintiffs refer to private causes of action derivable from criminal law, the problem is that they have not shown that a decision to release a wide universe of claims, including some claims that are not concurrently pending, is per se absurd. In this case, the alleged absurdity proves especially elusive because Plaintiffs knew of the causes of action now at issue when they agreed to release them (Third Am. Compl. ¶ 43), because the contractual language is so clear, and because that language was negotiated on Plaintiffs' behalf through class

7

counsel and then approved by a federal court. Thus, Plaintiffs' first two propositions do not establish Defendant's interpretation as absurd.

Plaintiffs' third pass at the claim of absurdity warrants separate treatment because it implicates not only the issue of absurdity, but also whether the ostensible definition of the Released Claims even encompasses Plaintiffs' causes of action in the first place. Plaintiffs say that "in order for the release to preclude the claims at bar, this Court must conclude that [Old Mutual] and Midland provided Spichiger with authority to commit fraud." (DE 114 at 6.) The Court disagrees. To be a Releasee, Defendant did not need authorization to commit fraud; he simply needed to have been an agent of the issuers. After all, the contracts made all "agents" of the issuers "Releasees" of all of Plaintiffs' "claims . . . that concern, refer or relate to, or arise out of, in whole or in part any facts, events or transactions relating to the Annuities that have occurred or were in existence at any time prior to the entry of the Final Order and Judgment." (*See, e.g.*, Midland Class-Action Settlement at 48–49 (CM-ECF pagination).) So Plaintiffs have relinquished the right to sue Midland's and Old Mutual's agents even for actions that exceeded the scope of their agency. The releases at issue are broad, but broad does not mean absurd without more than Plaintiffs have shown. Thus, the first three of Plaintiffs' five "facts and issues which preclude summary judgment" are disposed of.[4]

In Plaintiffs' last effort to avoid the consequences of the plain language of their releases, they invoke unconscionability. Their only supporting case applies Indiana law. And in it, the Court

---

[4] "Whether the resolutions of the prior class action lawsuits against [Old Mutual] and Midland release Spichiger from all liability in the case at bar" is not before the Court, because the instant motion is for only partial summary judgment. "Whether the claims at bar were litigated in the Class Actions" also misses the point, because the basis of the motion is the settlement of those claims, not *res judicata*. Finally, under the governing California law, "[w]hether the Browns had any intent to release claims not prosecuted in the Class Actions" is relevant apart from the text of their agreements only if that language is not clear, not explicit, or it involves an absurdity. *See* Cal. Civ. Code § 1638; 14A Cal. Jur. 3d Contracts § 216 (West 2013) ("[I]f the terms of an agreement are set forth in writing, and the words are not equivocal or ambiguous, the writing will constitute the contract, and a party is not permitted to escape from his or her obligation by showing that he or she did not intend to do what his or her words bound him or her to do.").

deemed the contract conscionable despite the acknowledged possibility of an imbalance in bargaining power. *DeGroff v. MascoTech Forming Techs.-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 907 (N.D. Ind. 2001).

Under California law, unconscionability—

> has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.

*Gentry v. Super. Ct. of L.A. County*, 165 P.3d 556, 572 (Cal. 2007) (quotation marks, alterations, and citations omitted).

> Both procedural and substantive unconscionability must be present for a contract to be unenforceable, but each need not be present in the same degree. Rather, the court invokes a sliding scale; the more substantively unconscionable the contract, the less evidence of procedural unconscionability is necessary to conclude that the contract is unenforceable, and conversely, the more procedural unconscionability is present, the less substantive unconscionability is required to justify such a determination.

*Lanigan v. City of L.A.*, 132 Cal. Rptr. 3d 156, 168–69 (Cal. Ct. App. 2011).

Because as the parties agree, the underlying class actions were "massive" (*e.g.*, DE 114 at 7), it is likely that each settlement was available to the Browns on a take-it-or-leave-it basis. In other words, Plaintiffs had "only the opportunity to adhere to the contract or reject it." *Gentry*, 165 P.3d at 572. This means some degree of procedural unconscionability, as defined by California law, was present in the negotiation of the class settlements.

But in pointing out that "claims of fraud and breach of fiduciary duty were not litigated in the prior lawsuits," that "a wide disparity existed in the bargaining power," and that "counsel for the certified classes was charged with prosecuting and resolving the common claims of the class

9

without consideration of Spichiger's fraudulent conduct," Plaintiffs do not show a severely one-sided outcome. All they have said as regards *substantive* unconscionability is that enforcing the releases would entail "blanket dismissal of all claims involving annuity/investment decisions involving the Browns." This is an overstatement, because the settlements cover only Midland and Old Mutual annuities, and it ignores four other important points. First, the central language of the releases is comprehensible to ordinary laypersons. Second, Plaintiffs knew of the claims at issue now when they became bound by the releases. (Third Am. Compl. ¶ 43.) Third, those settlements provided them valuable benefits. Fourth, another federal court deemed the broad language of the releases fair by the standards of Federal Rule of Civil Procedure 23(e)(2) for class settlement. Under the circumstances, Plaintiffs have not done enough to avoid their contracts on the ground of unconscionability.

## C. Conclusion

Defendant's motion for partial summary judgment (DE 121) is **GRANTED**. By settlement agreements, Plaintiffs have relinquished those of their claims against Defendant that relate to Midland or Old Mutual annuities.

**SO ORDERED** on September 3, 2013.

                                                  s/ Joseph S. Van Bokkelen
                                                  JOSEPH S. VAN BOKKELEN
                                                  UNITED STATES DISTRICT JUDGE